**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JUSTIN DUANE EWING, #104001, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00386-ALM- |
| v. | § | CAN |
| | § | |
| GRAYSON COUNTY, TEXAS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Sheriff Tom Watt and Doug Blackburn's Motion to Dismiss [Dkt. 34]. Plaintiff failed to respond to the Motion. Having considered Defendants' Motion, and all other relevant filings, the Court recommends the Motion to Dismiss be **GRANTED**, and Plaintiff Justin Duane Ewing's claims against be **DISMISSED**.

**BACKGROUND**

On May 20, 2021, *pro se* Plaintiff Justin Duane Ewing ("Plaintiff") initiated the instant action regarding complaints about his medical care and conditions of confinement while at Grayson County Jail [Dkt. 1]. Plaintiff is proceeding *in forma pauperis* and was a pretrial detainee at all relevant times. On September 27, 2021, Plaintiff filed an amended complaint – the live pleading in this matter – stating claims against Defendants Sheriff Tom Watt ("Sheriff Watt") and Doug Blackburn ("Blackburn")[1] (together, "Defendants") [Dkt. 21].[2]

---

[1] The live pleading names Doug (LNU) as a party; Defendants' Motion notes that "[w]hile reference to 'Doug (LNU)' is not a proper name, and no proper service was perfected, it is believed that the reference is to Doug Blackburn, who serves at the Grayson County jail" [Dkt. 34 at 2].

[2] Defendants Grayson County, Texas, and the Grayson County Sheriff's Office were named in Plaintiff's earlier complaints; however, both were dismissed by way of omission from the amended complaint that is the live pleading [*See* Dkt. 25].

***Plaintiff's Live Pleading***

Plaintiff was arrested on state criminal charges for aggravated assault and booked into the Grayson County Jail on February 6, 2021, where he remained until he was released on January 18, 2022 [Dkts. 21-1 at 1-2; 34 at 6].[3]  The Grayson County Jail is operated by the Grayson County Sheriff's Office.  Sheriff Watt is the elected Sheriff of Grayson County [Dkt. 34 at 2].  Blackburn is identified as the medical staff present during Plaintiff's intake [Dkt. 21-1 at 2].  Sheriff Watt is not alleged to have been present at intake or to have had any direct contact with Plaintiff.

Plaintiff's live pleading is lengthy, in excess of thirty handwritten pages, and raises numerous issues, many vaguely and merely in passing.  As best the Court can discern, Plaintiff brings claims under 42 U.S.C. § 1983 for (1) inadequate medical care received while a pretrial detainee at the Grayson County Jail, (2) inadequate policies related to delivery of medical care, (3) denial of access to the law library, as well as (4) other complaints related to conditions of confinement at the jail, including housing, discipline, and health and safety [Dkt. 21-1 at 1-19].  Plaintiff's claim for inadequate medical care is asserted against both Defendants Blackburn and Sheriff Watt; Blackburn is not referenced in connection with any of Plaintiff's other claims.  Plaintiff's remaining claims thus appear to be asserted only against Sheriff Watt.[4]

---

[3] Plaintiff was released from the Grayson County Jail on January 18, 2022.  It is unknown based on the Grayson County Jail records whether Plaintiff was released from custody or transferred, but at present, he is no longer housed at Grayson County and has not updated the Court with his current address, whether at another facility or a private residence.  The Court may properly take judicial notice of a document filed in another court proceeding.  *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998).  Courts may take judicial notice of "adjudicative facts," and the Fifth Circuit "allow[s] a 'district court to take judicial notice of the public records in ... prior state court proceedings.'"  *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (quoting *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019)).  "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

[4] Plaintiff submitted the live pleading on a different version of the prisoner § 1983 complaint form than his earlier complaint, which included check boxes indicating Sheriff Watt and Blackburn are being sued in both their official and individual capacities [*See* Dkt. 1 at 3].  As such, the Court presumes Plaintiff intends to continue asserting his claims against Defendants in both their individual and official capacities.

For relief, Plaintiff seeks: (1) an investigation by the Department of Justice Civil Rights Division related to Defendants' policies; (2) appointment of counsel as relief related to his access-to-the-courts claims; (3) costs of this litigation taxed against Defendants; (4) compensatory relief of $5 million "in order for Plaintiff to reestablish what he and his children lost during his unlawful incarceration"; (5) $2.5 million in damages for pain, suffering, and mental anguish; (6) $2.5 million in punitive damages; and (7) an order for Defendants to "publicly apologize to the families of the detainees that have been subjected to [the] injustices" alleged [Dkt. 21-1 at 20-21].

### *Summary of Plaintiff's Factual Allegations*

Plaintiff pleads he was injured during the intake process at the Grayson County Jail, sustaining injuries to the head, neck, and torso as "he was dropped face first, while cuffed" on the concrete floor, and a jail deputy used a taser on his lower back while he was restrained [Dkt. 21-1 at 1]. Plaintiff makes clear that his instant § 1983 claims are related to the medical care he received after these injuries and not the conduct which caused such injuries [Dkt. 21-1 at 1-2]. He alleges that he received a cup of water from Defendant Blackburn, but despite the severity of his injuries, no further examination was conducted by Blackburn or any other medical staff [Dkt. 21-1 at 2]. This is the sum of Plaintiff's allegations as to Defendant Blackburn, save and except a later assertion that Blackburn is aware of a cost-cutting policy that restricts inmates to no more than three non-emergent sick calls per seven days. Plaintiff alleges that "even a lay man" would have known he needed "immediate and adequate attention from a licensed medical physician" [Dkt. 21-1 at 2]. The live pleading avers that, "to date[,] Plaintiff has yet to receive any examination by a doctor, despite repeated medical request[s]" [Dkt. 21-1 at 2]. Plaintiff alleges he was denied an examination to "avoid diagnosis" of his injuries to avoid accountability for his assault at book-in [Dkt. 21-1 at 2].

Plaintiff then pivots to allegations regarding the quality of medical care at the Grayson County Jail, in particular related to the COVID-19 pandemic. He complains that pretrial detainees were "den[ied] COVID-19 testing and lifesaving vaccine[s] for more than a year," despite "known outbreaks" at the jail [Dkt. 21-1 at 3]. Plaintiff pleads Sheriff Watt maintained a policy that refused Plaintiff a proper COVID-19 examination, testing, and vaccination "despite knowing Plaintiff's medical records reflect the underlying conditions of bronchitis and acute asthma" [Dkt. 21-1 at 4]. Plaintiff alleges several other pretrial detainees were also denied certain care after being suspected of contracting COVID-19 or having been "treated with the [COVID-19] protocol" [Dkt. 21-1 at 4-7].[5] Plaintiff does not state that he contracted COVID-19, but he does allege he experienced symptoms of illness, such as headache, sweating, chills, and a fever [Dkt. 21-1 at 6]. Plaintiff alleges he "was denied his request to be examined by a doctor" [Dkt. 21-1 at 6]. Plaintiff pleads that, on August 23, 2021, he had additional symptoms of nausea and stomach pain, loss of taste and smell, and continued fever, chills, headache, and body ache [Dkt. 21-1 at 6]. Plaintiff alleges he "still suffers to date from the loss of his taste and smell" and that "he feared for his life and to date continues to live in fear" [Dkt. 21-1 at 6]. Plaintiff asserts that, against the Governor's mandate for long term institutions, "no face masks are required for detainees or jail personnel," which Plaintiff contends Sheriff Watts "knows" is a "serious threat to pretrial detainees health and life" [Dkt. 21-1 at 8]. Plaintiff again alleges he was denied a doctor's examination "despite [] twenty-one written medical request[s]" and was instead "remotely diagnosed and prescribed additional medications" on multiple occasions [Dkt. 21-1 at 10]. Plaintiff admits thereafter that

---

[5] Defendants argue Plaintiff cannot assert claims on behalf of other detainees and that allegations related to other inmates "should be disregarded" [Dkt. 34 at 9 n.6]. Given the context of the pleadings, Plaintiff does not appear to assert claims on behalf of other individuals, rather, he provides these as examples in support of his conditions of confinement claims to attempt to show his experiences are not isolated incidents. The Court considers these factual allegations as support for claims rooted in municipal liability rather than as actionable claims for other detainees.

he "began refusing mental health medications that were believed to be the source of the problem" [Dkt. 21-1 at 10].

In addition to his concerns about COVID-19, Plaintiff alleges the Grayson County Jail has a "substandard sanitation policy" where the housing areas are "covered in unknown substances," that they had not been cleaned "in at least the 7+ months" Plaintiff had been in the jail, and there were insect infestations and poor ventilation [Dkt. 21-1 at 7]. He contends the housing areas are overcrowded and do not provide enough personal space [Dkt. 21-1 at 7]. He also alleges detainees were forced to clean biohazardous materials without any personal protective equipment and that delivery of medical care in housing areas exposed detainees to biohazardous contaminants during meals [Dkt. 21-1 at 11-12]. As an example, Plaintiff alleges that he and several other detainees "underwent dental surgery in [their] holding cell[s]" [Dkt. 21-1 at 13]. Plaintiff next complains of the "extremely dangerous classification policy" at the Grayson County Jail that mixes violent and non-violent detainees together when making housing determinations [Dkt. 21-1 at 13-14]. He alleges Sheriff Watt "has a responsibility to provide and maintain appropriate housing" to protect the safety of pretrial detainees, which Plaintiff contends was not practiced when considering his own housing classification [Dkt. 21-1 at 14-15]. These housing policies "put [Plaintiff's] health and safety at risk" and "caused [him] extreme emotional distress and mental anguish" [Dkt. 21-1 at 18]. Plaintiff pleads Sheriff Watt, as the duly-elected sheriff, has a "ministerial duty to adopt policies necessary to ensure [the] safety and security of detainees" [Dkt. 21-1 at 9]. Plaintiff alleges the relevant policies are "so deficient" that they are facially "a repudiation of constitutional rights" and suffice as "the moving force" of the constitutional violations alleged [Dkt. 21-1 at 9]. Plaintiff further argues Sheriff Watt acted with "deliberate indifference by recklessly disregarding obvious and known risks" to pretrial detainee health and safety [Dkt. 21-1 at 12, 19]. Finally,

Plaintiff alleges Sheriff Watt "maintains a deficient policy that denies pretrial detainees adequate access to the court," and specifically that Sheriff Watt restricted Plaintiff's "access to the court during the course of this litigation" [Dkt. 21-1 at 19].[6]

***Motion to Dismiss***

On February 9, 2022, Sheriff Watt and Blackburn filed their Motion to Dismiss [Dkt. 34]. The Court directed Plaintiff to file a response to the pending Motion [Dkt. 39]; however, the order was returned as undeliverable [Dkt. 40]. Out of an abundance of caution, the Court entered a second order [Dkt. 42]. Notwithstanding, Plaintiff failed to file any response to the Motion or further update the Court with his current mailing address.[7] Sheriff Watt and Officer Blackburn move to dismiss Plaintiff's suit under Rule 12(b)(6) [Dkt. 34]. They urge dismissal on numerous grounds, including insufficiency of the pleadings for lack of personal involvement or supervisory liability, failure to plead deliberate indifference, and qualified immunity [Dkt. 34 at 4-16, 20-30].

## LEGAL STANDARDS

***Section 1915A and 1915(e) Screening***

A court may dismiss a civil rights complaint under § 1915A and § 1915(e) "at any time if it fails to state a claim on which relief can be granted." *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (citing 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1)). Plaintiff was a prisoner at the time he filed his complaint, thus his claims are subject to screening under § 1915A. *See Smith v. Tom Green Cnty. Jail*, No. 6:17-CV-0055-BL, 2018 WL 3873665, at *7 (N.D. Tex. Aug. 15, 2018) (citing *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998)). Plaintiff is also proceeding *in forma pauperis*, and his claims are subject to screening under § 1915(e). "Both § 1915(e)(2)(B)

---

[6] Plaintiff refers to several exhibits which are not attached to the instant complaint [Dkt. 21-1 at 19].
[7] *See* Eastern District of Texas Local Rule CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief." *Prescott v. Johnson*, No. 6:18CV577, 2022 WL 672694, at *3 (E.D. Tex. Mar. 7, 2022) (citing *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009)).[8] Both sections require the Court to dismiss for failure to state a claim, and the standard applied is the same as for a Rule 12(b)(6) dismissal. *See Smith*, 2018 WL 3873665, at *7-8; *Roberts v. Johnson*, No. 4:19-CV-00114-ALM-CAN, 2019 WL 6534924, at *4 (E.D. Tex. Oct. 28, 2019), *report and recommendation adopted*, No. 4:19-CV-114, 2019 WL 6527892 (E.D. Tex. Dec. 4, 2019).

### Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[9] "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. Further, in determining whether to grant a motion

---

[8] "A complaint is frivolous if it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Harris v. Bigs*, 381 F. App'x 363, 364 (5th Cir. 2010) (per curiam) (quoting *Martin*, 156 F.3d at 580); *see Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Cheek v. United States*, No. 4:19-CV-737-O, 2020 WL 6162045, at *3 (N.D. Tex. Oct. 21, 2020) (citing *Neitzke*, 490 U.S. at 327).

[9] To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

to dismiss under Rule 12(b)(6), a court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court may, however, consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).[10]

## ANALYSIS

### *No Personal Involvement/No Supervisory Liability – Sheriff Watt*

To establish liability under § 1983, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)). Defendants urge Sheriff Watt had no personal involvement in the events that are the basis of Plaintiff's claims, and that Plaintiff has insufficiently pleaded Sheriff Watt's personal involvement of [Dkt. 34 at 7-8]. Indeed, review of the Complaint reveals no mention of any act or omission committed personally by Sheriff Watt related to any claim, be it medical indifference, denial of access to the

---

[10] Relevant here, "[w]hen analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's well-pleaded allegations, his responses to a questionnaire, and the authenticated prison records." *Zarate v. Brown Cnty. Sheriff's Dep't*, No. 1:19-CV-00146-BU, 2022 WL 2124453, at *1 (N.D. Tex. Mar. 16, 2022) (citing *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in *forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)), *report and recommendation adopted*, No. 1:19-CV-00146-C, 2022 WL 2118980 (N.D. Tex. June 13, 2022). Defendants attach to their Motion the following exhibits, explaining:

> True and correct copies of key policy documents and excerpts are attached. (EX 1, EX 2) Further, Plaintiff's medication logs are filed under seal to show the ongoing care, contact and medication that was provided by the various medical staff and the doctor. (EX 3) The Health Department doctor and medical staff operate as independent and qualified health professionals, sometimes referenced as QHP in the supporting documents. (EX 2). . . . Here, Plaintiff specifically references the policies and they are therefore provided in support of this Motion to Dismiss. Likewise, Plaintiff references his care and medication issues, so his medication logs are provided under a motion to file under seal as a representation of the contact Plaintiff had with the medical providers. (EX 3)

[Dkt. 34 at 4]. Defendants urge the Court can properly consider these documents since there are referenced in Plaintiff's complaint.

courts, or any of the other conditions of the Grayson County Jail.  *See Toliver v. Braddy*, No. 4:20-CV-00132-ALM-CAN, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-CV-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021); *Diggs v. Waybourn*, No. 4:20-CV-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing § 1983 claims against a sheriff and officers for "lack of sufficient personal involvement").  Absent personal involvement or any facts that would give rise to supervisory liability, Plaintiff fails to state a claim upon which relief can be granted.  To the extent Plaintiff is suing Sheriff Watt based on his supervisory role, he cannot be held vicariously responsible for the acts of employees on any theory of vicarious liability or respondeat superior.  *See Rosas v. Bexar Cnty.*, No. SA-14-CA-1082-DAE, 2015 WL 1966130, at *9 (W.D. Tex. Jan. 31, 2015) ("[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."), *report and recommendation adopted*, No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015).  A supervisor may be held liable if he is not personally involved "only if the supervisory official implements a policy 'so deficient that the policy is itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"  *Carter v. Livingston*, No. 9:17-CV-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 287, 304 (5th Cir. 1987)), *report and recommendation adopted*, No. 9:17-CV-40, 2021 WL 825490 (E.D. Tex. Mar. 3, 2021).  Plaintiff's allegations, though including many of the requisite "buzz words," do not establish that Sheriff Watt implemented a policy or practice that was a moving force of any violation of his constitutional rights, discussed more fully *infra*.  *See Pike v. Cerliano*, No. 6:20CV619, 2021 WL 3704377, at *4 (E.D. Tex. Aug. 3, 2021) (dismissing § 1983 claim about COVID policies in county jail)

("[Plaintiff] does not connect any named Defendant to any action or constitutional violation. []
Likewise, he has not identified a specific policy or custom these Defendants have created or
implemented that has resulted in a constitutional violation."), *report and recommendation adopted*,
No. 6:20-CV-00619, 2021 WL 3700252 (E.D. Tex. Aug. 19, 2021); *see also McPherson v. Adams*,
No. CV621-028, 2022 WL 1508955, at *2 (S.D. Ga. May 12, 2022) (failing to meet the pleading
standard where the plaintiff's "allegation against defendant [] is little more than a collection of
legal 'buzzwords,' devoid of factual substance" related to risks of COVID). On this basis alone,
each of Plaintiff's claims against Sheriff Watt are subject to dismissal.

### Claims for Inadequate Medical Care

In the Fifth Circuit, pretrial detainee Fourteenth Amendment claims may be analyzed two
different ways, depending on the allegations—as challenges to the conditions of confinement or
as claims related to episodic acts or omissions. *See Fuentes v. Gomez*, No. 2:16-CV-390, 2018
WL 322161, at *5 (S.D. Tex. Jan. 8, 2018).[11] Here, Plaintiff's allegations fall into both categories.
Taking Plaintiff's claims as true, Defendants' Motion to Dismiss should be granted. In short,
Plaintiff's own words and exhibits fail to state a claim for deliberate indifference. Plaintiff's
general invocation of the phrase "deliberate indifference" is simply not enough to state a claim.

#### Episodic Claims – Asserted Against Defendants Blackburn and Sheriff Watt

To state a § 1983 claim based on episodic acts or omissions,[12] a plaintiff must show:
(1) that a government official acted or failed to act with subjective deliberate indifference to the
constitutional rights of the plaintiff; and (2) the predicate act or omission resulted from a

---

[11] This distinction was developed by the court in *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc).

[12] "An officer's failure to provide a detainee with immediate medical treatment is considered an episodic act or omission." *McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at *3 (E.D. Tex. Feb. 2, 2021) (citing *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021), *appeal dismissed*, No. 21-40222, 2021 WL 4301357 (5th Cir. Apr. 22, 2021).

government custom or policy that was adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights. *Estate of Hooker-Murray v. Dallas Cnty.*, No. 3:07-CV-0867-P, 2008 WL 11424337, at *4 (N.D. Tex. Dec. 19, 2008) (citing *Scott v Moore*, 114 F.3d 51, 54 (5th Cir. 1997)), *aff'd sub nom. Hooker-Murray v. Dallas Cnty.*, 332 F. App'x 991 (5th Cir. 2009). "In the context of claims based on denial of adequate medical care, demonstrating deliberate indifference requires evidence that prison officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Rogers v. Hierholzer*, 857 F. App'x 831, 833 (5th Cir. 2021) (per curiam) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. "Deliberate indifference is an extremely high standard to meet," requiring "a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice." *Bone v. Skinner*, No. 421CV00201RASCAN, 2022 WL 912100, at *5 (E.D. Tex. Feb. 24, 2022) (quoting *Rogers*, 857 F. App'x at 833), *report and recommendation adopted*, No. 4:21-CV-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022).

Defendants argue Plaintiff fails to state a claim based on episodic acts because he has not sufficiently alleged subjective deliberate indifference by either Blackburn or Sheriff Watt [Dkt. 34 at 14-15]. Defendants urge the complaint facially is nothing more than "unsupported opinions and conclusions and appear to be an attempt to assert medical and/or expert opinion or interpretation" regarding the care he received [Dkt. 34 at 8]. The Court agrees there are no non-conclusory

allegations that Defendants acted (or failed to act) with deliberate indifference to Plaintiff's serious medical needs.

Beginning with Plaintiff's COVID-19 allegations, Plaintiff admits he was administered the COVID-related protocol for detainees complaining of a fever, specifically that he was provided fever-reducing medication and placed on "routine temperature checks" [Dkt. 21-1 at 6].  *See Hennington v. Lumpkin*, No. 620CV00593JDKJDL, 2021 WL 5710105, at *8 (E.D. Tex. Nov. 1, 2021) ("the decision of when to test for COVID is a question of medical judgment and does not suffice to state a claim for deliberate indifference. Thus, the court finds that Plaintiff has failed to state a claim upon which relief may be granted."), *report and recommendation adopted*, No. 6:20CV593, 2021 WL 5630621 (E.D. Tex. Dec. 1, 2021).  And, to the extent Plaintiff complains that any specific medical request was denied or not followed up on as Plaintiff preferred, he has not alleged that Sheriff Watt or Blackburn were personally involved in these decisions  *See Harness v. Cerliano*, No. 6:21CV115, 2021 WL 4143039, at *5 (E.D. Tex. July 30, 2021) (dismissing § 1983 claim related to COVID medical care) ("Plaintiff complains of the actions of individual officers in not wearing gloves or masks, or passing another inmate the phone without sanitizing it. He does not allege that any of the named Defendants were involved with or knew of any of these incidents. Nor does Plaintiff link any of these incidents with allegedly unconstitutional policies implemented by the Defendants"), *report and recommendation adopted*, No. 6:21-CV-115-JDK-JDL, 2021 WL 4133925 (E.D. Tex. Sept. 10, 2021).  Plaintiff does not plead that Defendants, or any Grayson County Jail employee for that matter, refused to treat his symptoms, ignored his complaints, intentionally mistreated him, or engaged in wanton disregard for a serious medical need.  Rather, Plaintiff himself acknowledges he "was communicating with medical staff," "receiving responses" to medical requests, and "received multiple medications on multiple days,"

all of which show Plaintiff "had regular interaction with and response from various medical staff who are not party to this suit" [Dkt. 34 at 8-9].  *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmates allegations of deliberate indifference.").   Related to Plaintiff's care at intake, as Defendants argue, Blackburn responded through "inmate observation, assessment and care" that was appropriate at the time [Dkt. 34 at 7].  Plaintiff's issues are with the type of care he received; the allegations in the record wholly fail to rise to the level of showing deliberate indifference.

### *Conditions of Confinement Claims[13] – Asserted Against Sheriff Watt*

Defendants urge Plaintiff's conditions of confinement claim also fails [Dkt. 34 at 15-16]. Conditions of confinement claims are a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement."  *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc).   In a conditions of confinement case, "the proper inquiry is whether those conditions amount to punishment of the detainee."  *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  "Although failure-to-provide-medical-care claims are generally brought as episodic-acts-or-omissions claims, a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff does not implicate the acts or omissions of individuals but rather the jail's system of providing medical care to inmates."  *Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *4 (W.D. Tex. Nov. 25, 2019) (citing *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 463 (5th Cir. 2015)).

---

[13] A pretrial detainee's claim of unconstitutional conditions is governed by the Fourteenth Amendment.  *Johnson v. City of Shreveport*, No. 17-0900, 2018 WL 3824380, at *5 (W.D. La. Aug. 10, 2018) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).  The "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."  *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019).

"To prevail on a conditions of confinement claim, an inmate must prove that prison officials acted, or failed to act, with deliberate indifference to a substantial risk of serious harm." *Hennington*, 2021 WL 5710105, at *5 (citing *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)). "To show a violation, inmates must prove that they were exposed 'to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk.'" *Valentine v. Collier*, 978 F.3d 154, 162 (5th Cir. 2020) (quoting *Carlucci*, 884 F.3d at 538). The presence of a substantial risk "is an objective inquiry," while deliberate indifference is subjective and "requires a showing that prison officials had actual knowledge of a risk and disregarded it." *Id.* at 163.

Plaintiff alleges Sheriff Watt "knew or should have known" of the COVID risks to pretrial detainees, which does not rise to the level of deliberate indifference. *See Zarate*, 2022 WL 2124453, at *6 (quoting *Domino v. Tex. Dep't. of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) ("a prison official's 'failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference.'"). General allegations that Sheriff Watt is responsible for the Grayson County Jail are not enough. *See Hennington*, 2021 WL 5710105, at *6 (citation omitted) ("Plaintiff also states that Warden Stiefer was legally responsible for the Beto Unit and all the inmates in the prison and failed to protect them from COVID-19. These allegations fail to include facts regarding Warden Stiefer's personal misconduct and they do not include facts demonstrating that Warden Stiefer implemented an unconstitutional policy"). Once again, Plaintiff does not point to any actual or explicit policy of the Grayson County Jail that is deficient or shows indifference to any identified risk, and Defendants urge, to the contrary, that the Grayson County Jail's medical policy, as codified in the "Standard Operating Procedures – Health Services," shows that Plaintiff's allegations are unfounded and based on speculation

[Dkt. 34-2]. Undeniably, Plaintiff's own exhibits (attached to previous amended complaints) show medical staff were assessing Plaintiff and responding to his conditions based on a protocol that is consistent with CDC and Texas Commission on Jail Standards guidance [Dkt. 34 at 9 & n.5]. And while Plaintiff complains that the jail had no vaccination policy, Defendants point out that Plaintiff was offered a vaccine, but he refused it [Dkt. 34 at 9 n.5]. *See Harness*, 2021 WL 4143039, at *5 ("To the extent that Plaintiff's lawsuit may be read to raise conditions of confinement claims, he has failed to state a claim upon which relief may be granted because he has not identified an explicit policy or restriction, nor demonstrated a pattern or acts or omissions attributable to Sheriff Cerliano giving rise to an unconstitutional de facto policy or custom"). COVID-19 policies at the Grayson County Jail "may have been unsuccessful" from Plaintiff's perspective but "they were not unconstitutional." *See Valentine*, 978 F.3d at 165 ("The Eighth Amendment does not mandate perfect implementation."); *Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21-CV-00128 (PMH), 2022 WL 1406726, at *12 (S.D.N.Y. May 4, 2022) (citing *Pike*, 2021 WL 3704377, at *3) ("Even assuming Defendants' response to COVID-19 was imperfect, or negligent, it is not enough to support a finding of deliberate indifference."). Moreover, it is well settled that the general fear of contracting COVID-19 or that COVID-19 is spreading is insufficient to state a claim under Section 1983. *See Wilson v. Dallas Cnty. Jail*, No. 3:20-CV-02792-C (BT), 2022 WL 1176749, at *2 (N.D. Tex. Mar. 16, 2022) ("Wilson's conditions of confinement claim, rooted only in a generalized fear of catching COVID-19, is meritless."), *report and recommendation adopted*, No. 3:20-CV-2792-C, 2022 WL 1173802 (N.D. Tex. Apr. 20, 2022); *Scott v. Stiefer*, No. 6:20CV479, 2021 WL 2008810, at *4 (E.D. Tex. Apr. 15, 2021) ("Plaintiff's subjective fear of contracting Covid-19 is not sufficient to support a claim"), *report and recommendation adopted*, No. 6:20-CV-479-JDK-JDL, 2021 WL 1998796 (E.D. Tex. May 19, 2021); *Hamby v. Warden,*

*Estelle Unit*, No. CV H-20-3428, 2020 WL 7081606, at *2 (S.D. Tex. Dec. 3, 2020) ("a prisoner's generalized fear of contracting COVID-19 is not sufficient to state a claim for relief.").[14]

Plaintiff's remaining allegations relating to crowding/social distancing, unsanitary conditions, housing classification, and detainee discipline at the Grayson County Jail should also be dismissed for failure to state a § 1983 claim. "The Fourteenth Amendment entitles pretrial detainees to be free from punishment and to be provided with basic human needs, such as food, water, clothing, medical care, and safe conditions." *Mitchell v. Denton Cnty.*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 989392, at *9 (E.D. Tex. Feb. 28, 2022) (quoting *Hare*, 74 F.3d at 639, 650), *report and recommendation adopted*, No. 4:18-CV-399-ALM-KPJ, 2022 WL 987819 (E.D. Tex. Mar. 31, 2022). "However, deprivation of a basic need violates the Constitution only when the deprivation is so serious as to amount to a denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).[15] Whether a deprivation "fails to pass the minimal civilized measure of life's necessities threshold 'depends on the amount and duration of the deprivation,'" which requires evaluating "the extent to which the plaintiff experienced the deprivation, for how long, and the injury arising therefrom." *Id.* (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)). As Defendant urge, related to Plaintiff's housing classification, the booking officer "reviewed Plaintiff's criminal history, the currently charged offenses and used a form approved by the Texas Commissions on Jail [S]tandards to set the

---

[14] For example, though Plaintiff alleges that Sheriff Watt "does not require, by policy, an on site presence of a license medical doctor," and detainees are limited to no more than three non-emergency sick call requests per seven days [Dkt. 21-1 at 10, 13], while he alleges these delays may have caused him pain, he does not allege he was injured as result. Intentional delays in treatment may give rise to a claim, but Plaintiff does not allege any specific treatment was ordered and then delayed by Defendants. *See Scott*, 2021 WL 2008810, at *4 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)) ("Plaintiff does not allege that the delay was intentional. The mere fact of a delay does not establish that anyone had the 'culpable state of mind' necessary to state a claim for deliberate indifference.").

[15] Section 1983 is not a general tort remedy available to all who have suffered an injury at the hands of the state or its officers. *Waddleton v. Rodriguez*, 750 F. App'x 248, 252 (5th Cir. 2018). To prove a cause of action under § 1983, a plaintiff must show that they have "been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Id.*

classification," and his housing assignment with violent offenders was deemed appropriate based on "Plaintiff's history of assault, weapons and violent crime" and the "pending charges of assault and family violence" [Dkt. 34 at 29]. Plaintiff did not respond and has not otherwise controverted his criminal history or the instant offenses for which he was detained pretrial. And, as Defendants also argue, Plaintiff does not allege a physical injury resulting from any of the alleged conditions of confinement [Dkt. 34 at 28], aside from general fear and anxiety. Without physical injury, he cannot state a valid claim for mental anguish damages. *See Wilson*, 2022 WL 1176749, at *2 (collecting cases) ("because Wilson alleges no physical injury, the PLRA bars his claim for compensatory damages.").

### Claim for Denial of Access to the Courts – Asserted Against Sheriff Watt

"Prisoners have a constitutionally recognized right of access to the courts." *Prescott*, 2022 WL 672694, at *18 (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). The Fifth Circuit has clarified that the right of access "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging [the prisoner's] convictions or conditions of confinement." *Sparks v. Kay*, No. 1:18-CV-00112-BU, 2020 WL 4060570, at *2 (N.D. Tex. June 25, 2020) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)), *report and recommendation adopted*, No. 1:18-CV-00112-C, 2020 WL 4059858 (N.D. Tex. July 20, 2020). The Supreme Court of the United States has rejected attempts to extend the right of access to court to areas beyond challenges to sentences or conditions of confinement, holding:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Johnson v. Freshour*, No. 6:18-CV-109, 2018 WL 3849860, at *3 (E.D. Tex. Mar. 26, 2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)), *report and recommendation adopted*, No. 6:18-CV-109, 2018 WL 3840388 (E.D. Tex. Aug. 10, 2018).  Before an inmate may prevail on an access-to-the-courts claim, he "must show an actual injury in connection with an identifiable legal proceeding."  *Outlaw v. Gomez*, No. A-20-CV-745-RP, 2020 WL 4926544, at *1 (W.D. Tex. Aug. 21, 2020) (citing *Lewis*, 518 U.S. at 351-52).  "To prove his claim, a plaintiff must show real detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding."  *Carpenter v. Itawamba Co. Jail*, No. 1:18CV146-RP, 2022 WL 1086622, at *14 (N.D. Miss. Apr. 11, 2022) (citing *Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970)).

Plaintiff seemingly alleges he was prevented from using the Grayson County Jail law library to appropriately litigate the instant civil suit *pro se* and that Sheriff Watt has a policy that denies pretrial detainees adequate access to the courts.  No other detail is provided in the live pleading, although an earlier amended complaint includes one grievance complaining of the kiosk system [Dkt. 9-5].[16]  Defendants rejoin that Plaintiff had an appointed attorney to represent him in his criminal case, and he has not adequately alleged any injury from being denied access to the courts [Dkt. 34 at 29].  It is wholly unclear how Plaintiff was prevented from accessing any legal materials or tools.  Plaintiff certainly does not show he was impeded in filing the instant lawsuit

---

[16] Plaintiff attached a copy of a grievance request related to use of the law library to an earlier amended complaint [Dkt. 9-5].  The live pleading cites to but does not attach this exhibit.  Out of an abundance of caution, the Court reviewed this part of the record, and it appears Plaintiff's allegation is that kiosks provided as the Grayson County law library are "inadequate" [Dkt. 9-5 at 1].  The grievance officer responded on June 11, 2021, finding the grievance not sustained for the following reasons:

> The Grayson County Detention Facility provides a law library access via the kiosk and tablets. You have access to the courts in many ways including your attorney. If you are not familiar with the access I will name a few. You can always write to the courts via paper, pen, and envelope. You can write on a multipurpose form in the morning and circle court administration. You can call your attorney that is listed on file.

[Dkt. 9-5 at 2].

related to his conditions of confinement.  Courts have routinely upheld limitations on prisoners' access to the law library that fall short of showing a denial of access to the courts, such as here. *See Charles v. Castro*, No. 5:20CV184, 2022 WL 2734041, at *4 (E.D. Tex. Feb. 18, 2022) ("He has thus failed to allege an injury in fact, and his claim of denial of access to legal materials fails to state a claim upon which relief may be granted."), *report and recommendation adopted*, No. 5:20-CV-00184-RWS, 2022 WL 2132531 (E.D. Tex. June 14, 2022); *Norman v. Livingston*, No. H-14-2488, 2016 WL 1274759, at *6 (S.D. Tex. Mar. 31, 2016).  Plaintiff's claims for denial of access to the library should be dismissed for failure to state a claim.

For the foregoing reasons, the undersigned recommends that each of Plaintiff's claims be dismissed.  Notwithstanding, the Court also addresses the availability of the relief Plaintiff requests in connection with his claims.  By way of reminder, Plaintiff seeks as relief in this cause: (1) an investigation by the Department of Justice Civil Rights Division related to Defendants' policies; (2) appointment of counsel as relief related to his access-to-the-courts claims; (3) costs of this litigation taxed against Defendants; (4) compensatory relief of $5 million "in order for Plaintiff to reestablish what he and his children lost during his unlawful incarceration"; (5) $2.5 million in damages for pain, suffering, and mental anguish; (6) $2.5 million in punitive damages; and (7) an order for Defendants to "publicly apologize to the families of the detainees that have been subjected to [the] injustices" alleged [Dkt. 21-1 at 20-21].

### *No Longer Confined at Grayson County – DOJ Investigation and Public Apology*

Because Plaintiff is no longer a detainee at the Grayson County Jail, his requests for an "immediate investigation by the Department of Justice Civil Rights Division surrounding the conduct" of Defendants and for the Court to order a public apology by Defendants to the families of detainees are moot [Dkt. 21-1 at 20].  The Fifth Circuit and district courts in Texas have

repeatedly held that transfer out of the facility complained of moots any claim for declaratory or injunctive relief related to jail-specific remedies. *See, e.g.*, *Kennemer v. Parker Cnty.*, No. 4:20-CV-056-P, 2021 WL 1192249, at *10 (N.D. Tex. Mar. 30, 2021) (collecting cases) ("As [plaintiff] is no longer housed in either of these county jails, however, his claims for injunctive or declaratory relief are moot."), *aff'd*, No. 21-10467, 2022 WL 2610239 (5th Cir. July 8, 2022); *Lee v. Valdez*, No. CIV.A.3:07-CV-1298-D, 2009 WL 1406244, at *14 (N.D. Tex. May 20, 2009) (collecting cases) ("Courts therefore hold, for example, that when a prisoner challenges prison conditions after he is released from confinement, his claim for injunctive and/or declaratory relief is moot, and the prisoner can no longer challenge the prison conditions unless he can point to a concrete and continuing injury.").[17]   Even if the request for referral to DOJ was not moot, the Court would recommend this request be denied, as the Court has no power to initiate a DOJ investigation. *See Brown v. Alixa-Rx*, No. 4:21-CV-00284-ALM-CAN, 2022 WL 815021, at *8 (E.D. Tex. Feb. 14, 2022) (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974)), *report and recommendation adopted sub nom. Brown v. Alixa Rx, LLC*, No. 4:21-CV-284, 2022 WL 811054 (E.D. Tex. Mar. 16, 2022).  "Plaintiff is free to report, to the appropriate law enforcement or prosecuting authority, any crime he believes has been committed." *See Bilal v. Wolf*, No. 06 C 6978, 2009 WL 1871676, at *7 (N.D. Ill. June 25, 2009).  But the "Court does not refer cases for prosecution." *Bradford v. Blake*, No. 4:05-CV-136 CAS, 2005 WL 8176986, at *2 (E.D. Mo. Apr. 26, 2005).

---

[17] If Plaintiff was transferred to another facility instead of released, this would still be true, and any injunctive or equitable relief would be moot. *See Roussel v. Walker*, No. 5:20CV110, 2021 WL 851495, at *2 (E.D. Tex. Jan. 19, 2021) ("The Fifth Circuit has held that an inmate's transfer to another unit renders his claims for declaratory and injunctive relief moot, unless he can show a reasonable likelihood that he will be transferred back to the facility and again subjected to the allegedly unconstitutional actions."), *report and recommendation adopted*, No. 520CV00110RWSCMC, 2021 WL 848355 (E.D. Tex. Mar. 5, 2021).

***Appointment of Counsel***

The Court has already denied Plaintiff's requests for appointment of counsel [Dkts. 20; 25]. The present and third request for such relief does not address the factual deficiencies previously identified by the Court related to Plaintiff's prior requests. Plaintiff does not address any of the *Ulmer* factors to show "exceptional circumstances" as required by the Fifth Circuit for appointment of counsel in a civil case. As such, the Court recommends Plaintiff's request for appointment of counsel be denied. *See Vetcher v. Immigr. & Customs Enf't*, No. 1:16-CV-164-C, 2017 WL 11554996, at *2 (N.D. Tex. May 5, 2017) (denying successive request to appoint counsel where the court previously noted by prior order the required factors but none were addressed); *Perez v. McDonald*, No. CIV.A. C-07-373, 2007 WL 3236619, at *2 (S.D. Tex. Nov. 1, 2007) (denying second motion where the circumstances of the case were unchanged).

***Costs of Litigation Taxed Against Defendants***

To the extent Plaintiff requests the Court to order Defendants to pay for the costs of this litigation, Plaintiff is proceeding *in forma pauperis*, and by statute, he is required to pay the filing fee. No other costs are identified as incurred by Plaintiff.

***Requests for Compensatory and Punitive Damages***

The Court should also dismiss Plaintiff's request for compensatory and punitive damages to the extent not related to any claim for physical injury [Dkt. 21-1 at 20-21]. Plaintiff seeks compensatory relief of $5 million "in order for Plaintiff to reestablish what he and his children lost during his unlawful incarceration," but Plaintiff does not state a claim challenging the lawfulness of his incarceration. Plaintiff next requests "$2.5 million in damages for pain, suffering, and mental anguish," and another $2.5 million in punitive damages. As a general rule, the PLRA "prevents prisoners from seeking compensatory damages for violations of federal law where no

physical injury is alleged." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 606 (5th Cir. 2008) (citing *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam)).  The Fifth Circuit has "recognized [there are instances] that a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights." *Id.* (citing *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007) (per curiam)).  But "punitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)) (internal quotation marks omitted).  Plaintiff has not pleaded any concrete physical injury for of his § 1983 claims nor alleged either Defendant personally caused such injury. Plaintiff expressly foregoes assertion of any excessive force claim, and his general allegations related to his pleaded claims do not rise to a "specific" injury.  *See Cannon v. Dewberry*, No. 6:17CV144, 2019 WL 2465023, at *12 (E.D. Tex. Jan. 17, 2019) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)) (concluding general allegations are insufficient to allege a "specific physical injury" under the PLRA).  Nor has Plaintiff alleged either Defendant acted with evil intent or reckless indifference in relation to any of his claims.  *See McKnight v. MTC*, No. 3:15-CV-1647-K-BK, 2015 WL 7730995, at *2 (N.D. Tex. Nov. 9, 2015) (recommending a request for punitive damages under § 1983 be dismissed because the plaintiff failed to allege facts demonstrating the defendant's conduct was "motivated by evil intent" or demonstrated "reckless or callous indifference" to the plaintiff's constitutional rights), *report and recommendation adopted*, No. 3:15-CV-01647-K, 2015 WL 7735910 (N.D. Tex. Nov. 30, 2015).  Requests for punitive damages and damages unrelated to any claim of physical injury should be dismissed.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that Defendants Sheriff Tom Watt and Doug Blackburn's Motion to Dismiss [Dkt. 34] be **GRANTED**, and Plaintiff Justin Duane Ewing's claims be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

   **SIGNED this 19th day of August, 2022.**


_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE